UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANDELL HECTOR,<br><br>               Plaintiff,<br>  -against-<br><br>188 TRIBECA, LLC d/b/a NILI LOTAN, and NILI LOTAN, INC.<br><br>               Defendants. | Case No.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Andell Hector ("Plaintiff" or "Mr. Hector"), by his attorneys, Mesidor PLLC, complaining of Defendant 188 Tribeca, LLC, d/b/a Nili Lotan, and Defendant Nili Lotan, Inc. (collectively, "Defendants" or the "Company" or "Nili Lotan") alleges, upon information and belief, as follows:

**PRELIMINARY STATEMENT**

1. For over three years, Mr. Hector, a seasoned professional with 17 years of luxury retail experience, excelled in his role as a Stock Manager at 188 Tribeca, LLC. He managed critical operations across every department, maintained an unblemished performance record, and developed a positive reputation among his peers. Yet while his white colleagues, some fresh out of college, climbed the ladder with promotions and raises, Mr. Hector's career stood still. He never received a single raise or promotion. The message was clear: there was no upward path for a Black man at this Company.

2. When Mr. Hector spoke up about the discrimination in November 2024, the Company retaliated swiftly. Just two weeks later, the Company placed Mr. Hector on a pretextual Performance Improvement Plan—the first negative feedback in his unblemished three-year record. In the face of adversity, Mr. Hector rose to the challenge. He completed the plan successfully and received praise from his manager for his performance on February 18, 2025. The discrimination

1

Mr. Hector endured went beyond stalled opportunities and pretextual performance criticism. In December 2024, a white coworker, who had a history of discriminatory behavior, casually used the word "nigger" to his face—twice—asking if his music was "the kind where they use the word 'nigger and cunt.'" Management responded with silence; there was no meaningful investigation, no accountability, just tolerance for overt racism.

3.      Despite Mr. Hector's successful completion of the performance improvement plan, the Company terminated his employment on April 8, 2025, citing the same performance his manager had commended six weeks earlier.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 as this action involves claims arising under federal law.

5.      This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343 because Plaintiff's claims under Section 1981 are brought to recover damages for the deprivation of equal rights.

6.      This Court has supplemental jurisdiction over Plaintiff's related claims arising under state and local law pursuant to 28 U.S.C. § 1367(a).

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because Defendants conduct business in this judicial district and a substantial part of the events or omissions giving rise to the instant claims occurred in this judicial district.

## ADMINISTRATIVE PROCEDURES

8.      Section 1981 does not require Plaintiff to exhaust any administrative remedies before filing this Complaint in federal court.

9.      On May 29, 2025, Plaintiff filed a charge of race-based discrimination and retaliation with the United States Equal Employment Opportunity Commission ("EEOC") against Nili Lotan under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII").

10. Plaintiff received his Notice of Right to Sue from the EEOC on December 23, 2025.

11. On October 8, 2025, Plaintiff filed a charge of race-based discrimination and retaliation with the EEOC against 188 Tribecca, LLC, under Title VII .

12. When Plaintiff receives the notice of his right to sue from the EEOC regarding his charge against 188 Tribecca, LLC, he will seek to amend the Complaint to add claims for discrimination under Title VII. The facts set forth herein support those claims as well, and therefore there will be no prejudice to Defendants by this procedure.

## PARTIES

13. Plaintiff is an African-American male and a resident of New York, NY.

14. Defendant, 188 Tribecca, LLC, is a limited liability company registered in New York and located at 188 Duane Street, New York, NY 10037.

15. 188 Tribecca, LLC operates a fashion and luxury designer clothing store located in New York, operating under the luxury brand Nili Lotan.

16. Nili Lotan, Inc. is a domestic corporation registered in Delaware and located at 188 Duane Street, New York, NY 10037.

17. The brand Nili Lotan operates and maintains retail stores in New York and other states.

18. Defendants employ between 101 and 200 employees.

19. At all relevant times, Defendants were Plaintiff's employers under Section 1981, Title VII, NYSHRL, and NYCHRL.

20. At all relevant times, Defendants Nili Lotan, Inc., and 188 Tribeca, LLC operated as joint employers. Plaintiff's employment offer letter, paychecks, and separation agreement (unexecuted by Plaintiff) came from 188 Tribeca, LLC. However, any modifications in the store's

policies and employee standards always came directly from the Nili Lotan corporate headquarters, approved on many occasions by Nili Lotan, the brand's founder, herself. Nili Lotan the individual led trainings and briefings in person at the retail stores, and/or virtually. Style training, brand knowledge, product education, and seasonal collection briefings were all conducted under Nili Lotan, the brand, corporate guidance. Defendants perform day-to-day business as Nili Lotan, including outwardly facing the public as Nili Lotan and internally directing employees as Nili Lotan. During Plaintiff's employment, he communicated often with third-party vendors and always referred to the business as Nili Lotan. Referring to the business as Nili Lotan, in those instances, was always accepted as proper and accurate. Plaintiff's performance review form included the Nili Lotan logo and the Defendants' internal email address system used the Nili Lotan domain, signatures, and branding.

## MATERIAL FACTS

### Plaintiff Begins Working for Defendants and Performs Exceptionally

21.     Mr. Hector joined Nili Lotan as a stock manager on October 6, 2021, bringing with him about 14 years of luxury retail experience..

22.     Upon hiring, Plaintiff reported to April McCord.

23.     As a stock manager, Plaintiff completed a wide range of responsibilities. His role required cross-collaboration with all departments throughout the Company, including customer service, public relations, buying and allocation, and visual merchandising. He managed the acceptance and organization of product deliveries, as well as the transfer of products from the flagship location to other Nili Lotan retail stores. Plaintiff maintained inventory accuracy through weekly cycle-counts of units and the resolution and investigation of inventory discrepancies. He managed and monitored all products from the store that were borrowed by or transferred to other

departments throughout the Company, and he prepared and executed the biannual inventory. On a daily basis, Plaintiff managed the processing of approximately twenty or more ecommerce/omni orders. He managed and monitored the store's consignment business, working closely with stylists to ensure that consignments were processed in a timely and efficient manner. Plaintiff worked closely with e-stylists to complete consignments and send sales for their clients. He resolved customer service issues, developed and implemented new operational processes, and trained and onboarded new hires. Plaintiff completed the monthly reconciliation of all expenses charged to the store's credit card and was responsible for ordering essential store supplies.

24. Over the course of his employment at Nili Lotan, Plaintiff performed his job well and maintained an unblemished performance record until the Company began its retaliatory campaign against him. Plaintiff consistently went above and beyond to motivate his colleagues and encourage good work ethics, contributing to high performance on his team.

**Defendants Discriminate Against Plaintiff with Respect to Promotions and Raises**

25. Despite his hard work, dedication, and expertise, Mr. Hector discovered an invisible ceiling for Black employees at the Company. He never received a single raise or promotion during his entire tenure, despite several requests for advancement and formal performance feedback. His title and salary remained stagnant for over three years.

26. While Mr. Hector's career stalled, he watched as his less-experienced, non-Black colleagues were consistently promoted and given raises.

27. For example, in or around February 2025, a white associate, Isabella Lumerman, a recent college graduate with limited luxury retail experience, received a promotion to a stylist role. Upon information and belief, the Company promoted Ms. Lumerman again in August 2025 to assistant manager.

5

28. Similarly, Dayton Sims, a white stylist with a similar tenure to Mr. Hector, received a promotion to assistant manager in or around December 2024 or January 2025.

29. The Company's General Manager during Mr. Hector's employment, David Morales, who is non-Black and has significantly less experience than Mr. Hector, received several rapid promotions, moving from stylist to assistant general manager, to general manager, to dual general manager, and finally to U.S. Retail Coordinator in July 2025.

30. The Company's pattern of discriminating against its Black employees was not limited to promotions. One of the few Black associate stylists, Jewel Friday, had to advocate for himself to receive the same base salary as his white peers, despite having more experience and a higher level of education. Mr. Friday earned a base salary of approximately $50,000, while his white peers earned approximately $58,000-60,000.

### **Defendants Fostered a Racially Hostile Work Environment**

27. Racism was commonplace at the Company. Mr. Hector was one of very few Black employees and was the only Black stock manager.

28. In the summer of 2023, the retail director, Adrian Vargas, a non-Black man, played a video on his phone in front of a group of employees, including Mr. Hector and one other Black employee. The video featured a white woman repeatedly using the N-word. Mr. Vargas found the video amusing and attempted to garner laughs from the group. Mr. Hector expressed to a colleague that he found the video offensive, and the incident was reported to Human Resources Manager, Tiffany Montano. To Mr. Hector's knowledge, the Company conducted no investigation and held no one accountable for this overtly racist incident.

29. On December 19, 2024, Mr. Hector experienced yet another direct and shocking instance of racial hostility. While Mr. Hector was speaking with a Hispanic colleague, Manny

6

Brisman, a white coworker, Melanie Dardik, interrupted them. Ms. Dardik asked Mr. Hector if the music playing was "the kind of music where they use the word 'nigger and cunt.'"

30. Shocked and offended by her flippant use of the racial slur, Mr. Hector asked for clarity. Ms. Dardik responded, "You know, where they use the word nigger and cunt and I'm going to fuck you from behind bitch."

31. Mr. Hector was stunned by Ms. Dardik's foul language, her derogatory and racially motivated generalization about hip-hop music, and her use of the word "nigger." After Ms. Dardik left, Mr. Hector's colleague, Mr. Brisman, agreed that her use of the N-word was offensive.

32. The incident was reported to Mr. Hector's General Manager, David Morales, who then reported it to Human Resources. Although Mr. Morales told Mr. Hector an investigation was pending, no one from Human Resources or any other Company leader ever interviewed Mr. Hector about the incident. The Company's failure to formally acknowledge the incident or offer any support caused Mr. Hector significant distress and demonstrated its tolerance for a racially hostile work environment.

**Defendants Retaliated Against Mr. Hector for Complaining About Discrimination**

33. In or around October 2024, Mr. Hector engaged in protected activity by complaining about discrimination to his General Manager, Mr. Morales. Specifically, Mr. Hector expressed concerns about his lack of raises and promotions compared to his peers and constant obstacles to his earning commission that his peers were not subjected to. Mr. Hector explained that he felt the Company was exploiting him and treating him unfairly.

34. In early November 2024, within a few weeks of Mr. Hector's initial complaint, Mr. Morales retaliated against him by approaching him for a pretextual performance conversation.

35. Mr. Hector again engaged in protected activity by complaining to his General Manager, Mr. Morales, that he felt targeted and treated unfairly. Mr. Hector explained that despite his hard work, he had never received a raise or promotion and felt the Company was treating him differently from his peers. Mr. Morales responded that it was not his fault.

36. In a clear act of retaliation, on November 18, 2024—just two weeks after his second complaint—Mr. Morales placed Mr. Hector on a Performance Improvement Plan ("PIP"). This was the first time in his over three years of employment with Defendants that Mr. Hector had ever received any negative performance feedback or disciplinary action. The PIP's claims regarding Mr. Hector's time management, productivity, and accountability were pretextual and unsupported by reality.

37. While on this unjustified PIP, Mr. Hector again engaged in protected activity by speaking to his manager about Ms. Dardik's use of the N-word on December 19, 2024.

38. Specifically, Mr. Brisman mentioned Ms. Dardik's use of the N-word to Mr. Morales, after speaking with Mr. Hector following the incident. Mr. Morales reported the incident to Human Resources. Mr. Morales then informed Plaintiff that an investigation was pending. Despite this, however, Human Resources, nor any other person at the Company, interviewed Plaintiff about the incident, aside from his earlier conversation with Mr. Morales.

39. On February 18, 2025, Mr. Morales, Retail Director Alison Kopp, and HR Manager Tiffany Montano informed Mr. Hector that he had successfully completed the PIP. They commended him for his performance and professionalism. Mr. Morales specifically remarked that Mr. Hector's performance had been much improved and that of all the store's associates, Mr. Hector was the person he was "least concerned or worried about."

**Defendants Terminate Plaintiff's Employment for Pretextual Reasons**

40. Just six weeks later, on April 8, 2025, the Company abruptly terminated Mr. Hector's employment during an impromptu meeting, citing "performance" as the reason.

41. The Company's stated reason for his termination was unequivocally pretext for discrimination and retaliation. The firing directly contradicted the praise he had received just weeks earlier upon his successful completion of the PIP.

42. Further evidence of the Company's retaliatory motive was revealed after Mr. Hector's termination. Former HR Manager Tiffany Montano informed Mr. Hector that leadership, likely referring to Ms. Kopp and Mr. Morales, had wanted to fire him prior to the PIP, but she persuaded them to place him on a PIP instead. This reveals that the Company had a premeditated intent to terminate Mr. Hector, which was put into motion after he complained about discrimination.

43. The Company's disparate treatment is further evidenced by its handling of Ms. Dardik, the white coworker who used the N-word. Ms. Dardik had a history of poor performance and had received a formal final warning for unprofessional conduct. Yet, the Company gave her multiple opportunities to redeem herself. In stark contrast, Mr. Hector, a Black employee with no prior documented performance issues, was targeted for termination and ultimately fired after he complained about racial discrimination.

**Mr. Hector Suffered Significant Damages as a Result of Nili Lotan's Unlawful Conduct**

44. As a direct and proximate result of Defendants' unlawful discrimination and
44. retaliation, Mr. Hector has suffered and continues to suffer significant damages. These damages
44. include, but are not limited to, loss of income, loss of opportunity for advancement, and severe
44. emotional distress, mental anguish, humiliation, anxiety, and depression.

## FIRST CAUSE OF ACTION
## <u>FOR DISCRIMINATION UNDER SECTION 1981</u>
### *Against All Defendants*

45. Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

46. 42 U.S.C. § 1981 states, in the relevant part, as follows:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

47. As described herein, Defendants denied Plaintiff his rights as protected by Section 1981 on the basis of his race, by fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment. Defendants also subjected Plaintiff to harassment and disparate treatment in the terms and conditions of his employment based on his race.

48. As a direct and causal result of Defendants' unlawful conduct, Mr. Hector has suffered, and continues to suffer, monetary and/or economic harm for which he is entitled to an award of damages, in addition to reasonable attorneys' fees and costs.

49. As a direct and causal result of Defendants' unlawful conduct, Mr. Hector has suffered, and continues to suffer, mental anguish and emotional distress for which he is entitled to an award of compensatory damages and other relief.

50. Defendants' conduct was willful and/or showed reckless disregard for Plaintiff's statutorily protected rights.

## SECOND CAUSE OF ACTION
## FOR RETALIATION UNDER SECTION 1981
*Against All Defendants*

51. Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

52. 42 U.S.C. § 1981 prohibits employers from retaliating against employees who complain of or otherwise engage in protected activities under Section 1981.

53. As described herein, Defendants violated Plaintiff's rights under Section 1981 by fostering, condoning, accepting, ratifying, negligently failing to prevent or remedy a hostile work environment, placing him on a pretextual performance improvement plan, and/or terminating his employment in retaliation for his complaints of discrimination.

54. As a direct and causal result of Defendants' unlawful conduct, Mr. Hector has suffered, and continues to suffer, monetary and/or economic harm for which he is entitled to an award of damages, in addition to reasonable attorneys' fees and costs.

55. As a direct and causal result of Defendants' unlawful conduct, Mr. Hector has suffered, and continues to suffer, mental anguish and emotional distress for which he is entitled to an award of compensatory damages and other relief.

56. Defendants' conduct was willful and/or showed reckless disregard for Plaintiff's statutorily protected rights.

## THIRD CAUSE OF ACTION
## FOR DISCRIMINATION UNDER THE NYCHRL
*Against All Defendants*

57. Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

58. New York City Administrative Code § 8-107(7) provides that

> It shall be an unlawful discriminatory practice: (a) For an employer or agent thereof, because of the actual or perceived age, **race**, creed, color, national origin, **gender**, disability, marital status, partnership status, caregiver status, sexual and reproductive health decisions, sexual orientation, uniformed service, height, weight, or immigration or citizenship status of any person . . . to discharge from employment such person; or . . . to discriminate against such person in the compensation or in terms, conditions or privileges of employment.

(Emphasis added).

59. As described herein, Defendants discriminated against Plaintiff on the basis of his race in violation of the NYCHRL, by fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment. Defendants also subjected Plaintiff to harassment and disparate treatment in the terms and conditions of his employment based on his race.

60. As a direct and causal result of Defendants' unlawful conduct, Mr. Hector has suffered, and continues to suffer, monetary and/or economic harm for which he is entitled to an award of damages, in addition to reasonable attorneys' fees and costs.

61. As a direct and causal result of Defendants' unlawful conduct, Mr. Hector has suffered, and continues to suffer, mental anguish and emotional distress for which he is entitled to an award of compensatory damages and other relief.

62. Defendants' conduct was willful and/or showed reckless disregard for Plaintiff's statutorily protected rights.

### FOURTH CAUSE OF ACTION
### FOR RETALIATION UNDER THE NYCHRL
*Against All Defendants*

63. Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

64. New York City Administrative Code § 8-107(1) provides that

> It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter, (ii) filed a complaint, testified or assisted in any proceeding under this chapter, (iii) commenced a civil action alleging the commission of an act which would be an unlawful discriminatory practice under this chapter. . .

65. As described herein, Defendants retaliated against Plaintiff for his protected activities under the NYCHRL by fostering, condoning, accepting, ratifying, negligently failing to prevent or remedy a hostile work environment, placing him on a pretextual performance improvement plan, and/or terminating his employment in retaliation for his complaints of discrimination.

66. As a direct and causal result of Defendants' unlawful conduct, Mr. Hector has suffered, and continues to suffer, monetary and/or economic harm for which he is entitled to an award of damages, in addition to reasonable attorneys' fees and costs.

67. As a direct and causal result of Defendants' unlawful conduct, Mr. Hector has suffered, and continues to suffer, mental anguish and emotional distress for which he is entitled to an award of compensatory damages and other relief.

68. Defendants' conduct was willful and/or showed reckless disregard for Plaintiff's statutorily protected rights.

### FIFTH CAUSE OF ACTION
### FOR DISCRIMINATION UNDER THE NYSHRL
*Against All Defendants*

69. Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

13

70. New York State Executive Law § 296 provides that

> It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of an individual's age, **race**, creed, color, national origin, citizenship or immigration status, sexual orientation, gender identity or expression, military status, **sex**, disability, predisposing genetic characteristics, familial status, marital status, or status as a victim of domestic violence, to . . . discriminate against such individual in compensation or in terms, conditions or privileges of employment.

(Emphasis added).

71. As described herein, Defendants discriminated against Plaintiff on the basis of his race in violation of the NYSHRL, by fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment. Defendants also subjected Plaintiff to harassment and disparate treatment in the terms and conditions of his employment based on his race.

70. As a direct and causal result of Defendants' unlawful conduct, Mr. Hector has suffered, and continues to suffer, monetary and/or economic harm for which he is entitled to an award of damages, in addition to reasonable attorneys' fees and costs.

71. As a direct and causal result of Defendants' unlawful conduct, Mr. Hector has suffered, and continues to suffer, mental anguish and emotional distress for which he is entitled to an award of compensatory damages and other relief.

72. Defendants' conduct was willful and/or showed reckless disregard for Plaintiff's statutorily protected rights.

## SIXTH CAUSE OF ACTION
## FOR RETALIATION UNDER THE NYSHRL
*Against All Defendants*

73. Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

74. New York State Executive Law § 296 provides that

> It shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article or because he or she has filed a complaint, testified or assisted in any proceeding under this article.

75. As described herein, Defendants retaliated against Plaintiff for his protected activities under the NYSHRL by fostering, condoning, accepting, ratifying, negligently failing to prevent or remedy a hostile work environment, placing him on a pretextual performance improvement plan, and/or terminating his employment in retaliation for his complaints of discrimination.

76. As a direct and causal result of Defendants' unlawful conduct, Mr. Hector has suffered, and continues to suffer, monetary and/or economic harm for which he is entitled to an award of damages, in addition to reasonable attorneys' fees and costs.

77. As a direct and causal result of Defendants' unlawful conduct, Mr. Hector has suffered, and continues to suffer, mental anguish and emotional distress for which he is entitled to an award of compensatory damages and other relief.

78. Defendants' conduct was willful and/or showed reckless disregard for Plaintiff's statutorily protected rights.

## SEVENTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
*Against Nili Lotan, Inc.*

79. Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

80. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., prohibits employers from discriminating against employees on the basis of race.

81. As described herein, Defendant Nili Lotan, Inc. discriminated against Plaintiff on the basis of his race in violation of Title VII, by fostering, condoning, accepting, ratifying, and/or negligently failing to prevent or remedy a hostile work environment. Defendant also subjected Plaintiff to harassment and disparate treatment in the terms and conditions of his employment based on his race.

82. As a direct and causal result of Defendant's unlawful conduct, Mr. Hector has suffered, and continues to suffer, monetary and/or economic harm for which he is entitled to an award of damages, in addition to reasonable attorneys' fees and costs.

83. As a direct and causal result of Defendant's unlawful conduct, Mr. Hector has suffered, and continues to suffer, mental anguish and emotional distress for which he is entitled to an award of compensatory damages and other relief.

84. Defendant's conduct was willful and/or showed reckless disregard for Plaintiff's statutorily protected rights.

## EIGHTH CAUSE OF ACTION
## FOR RETALIATION UNDER TITLE VII
*Against Nili Lotan, Inc.*

85. Plaintiff repeats and realleges each and every allegation in the preceding paragraphs as if set forth fully herein.

86. Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., prohibits employers from retaliating against employees who oppose practices made unlawful under Title VII or who participate in Title VII proceedings.

87. As described herein, Defendant Nili Lotan, Inc. retaliated against Plaintiff for his protected activities under Title VII by fostering, condoning, accepting, ratifying, negligently failing to prevent or remedy a hostile work environment, placing him on a pretextual

performance improvement plan, and/or terminating his employment in retaliation for his complaints of discrimination.

88. As a direct and causal result of Defendant's unlawful conduct, Mr. Hector has suffered, and continues to suffer, monetary and/or economic harm for which he is entitled to an award of damages, in addition to reasonable attorneys' fees and costs.

89. As a direct and causal result of Defendant's unlawful conduct, Mr. Hector has suffered, and continues to suffer, mental anguish and emotional distress for which he is entitled to an award of compensatory damages and other relief.

90. Defendant's conduct was willful and/or showed reckless disregard for Plaintiff's statutorily protected rights.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declare that Defendants engaged in unlawful employment practices prohibited by Section 1981, Title VII, the NYSHRL, and the NYCHRL in that Defendants discriminated against Plaintiff on the basis of his race and retaliated against him;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination and to otherwise make him whole for any losses suffered as a result of such unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional injury, distress, pain and suffering and injury to his reputation in an amount to be proven;

D. Awarding Plaintiff attorneys' fees, costs, disbursements, and expenses incurred in the prosecution of the action; and

E.    Grant injunctive relief requiring Defendants to implement anti-discrimination training and policies; and

F.    Grant any other relief the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: February 2, 2026
Bellport, New York

**MESIDOR PLLC**

*[signature]*

Marjorie Mesidor
Joseph Myers
Katlyn Palmatier
30 Station Road, Ste 5
Bellport, NY 11713
(212) 930-6010
mm@marjoriemesidor.com
jm@marjoriemesidor.com
kp@marjoriemesidor.com

*Attorneys for Plaintiff*